IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SE-KURE CONTROLS, INC. | |
| Plaintiff, | No. 02 C 3767 |
| | Judge Wayne Andersen |
| vs. | Magistrate Judge Jeffrey Cole |
| VANGUARD PRODUCTS GROUP, INC., and TELEFONIX, INC., Defendants. | |

## MEMORANDUM OPINION AND ORDER

Se-Kure Controls, Inc. filed this patent infringement suit in 2002, alleging that Vanguard Products Group, Inc. ("Vanguard"), Telefonix, Inc. ("Telefonix") and other defendants willfully infringed United States Patent No. RE37,590 (the " '590 Patent" or the "patent-in-suit"). The patent describes a retractable sensor assembly for use with an alarm system to prevent theft of consumer electronics products while eliminating the problem of entangled and unsightly sensor cords. These alarm systems are installed at many major retail stores, allowing consumers to pickup and view hand-held electronic devices, such as cameras and cell phones, while preventing the theft of those devices. Messrs. Thomas Rebb and Gregory Saputo worked in electronics store security for years prior to this case and would purportedly testify as to whether plaintiff's security device was offered for sale more than a year before the '590 Patent was filed, which would invalidate the patent under 35 U.S.C. § 102(b). *See Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152, 1160 (Fed. Cir. 2006).

Se-Kure has moved to exclude from consideration the Rebb and Saputo Declarations, which

have been offered in support of the defendants' pending motion for summary judgment on the theory that Vanguard and Telefonix failed to disclose them as witnesses under Rule 26(a)(1)(A), Federal Rules of Civil Procedure, and failed to supplement the initial disclosures and interrogatory responses to disclose that the defendants actually "intended to rely" on Rebb and Saputo. (*See* Rule 26(e)(2); Motion to Exclude Witnesses Thomas Rebb and Gregory Saputo at 10; Supplemental Brief in Support of Motion at 1; Reply in Support of Motion to Exclude at 1, 3, 4). The defendants' omissions are conceded. But that is the beginning, not the end, of analysis. As Justice Jackson once observed, "[u]nless we are to reach judgments as did Plato's men who were chained in a cave so that they saw nothing but shadows we should consider the facts of [this] case at least as an hypothesis to test the validity of the conclusions. . . ." *Douglas v. City of Jeanette*, 319 U.S. 157, 166 (1943) (Jackson, J., dissenting).

## I.
## FACTUAL BACKGROUND

### A.
### The Initial Declarations Of Messrs. Rebb and Saputo

One of the original defendants, Protex International Corp. – which has since settled with plaintiff – had obtained Declarations from two prospective witnesses, Gregory Saputo and Thomas Rebb. In his April 30, 2004 Declaration, Mr. Saputo explained that he held the position of Director Of Internal Audits And Loss Prevention at Highland Super Stores from 1986 until June1992. His duties included the analysis and implementation of product security and alarm systems. He was interested in ways to protect portable car stereos and camcorders against theft while they were being displayed for viewing by potential customers. (*Motion To Exclude*, Ex. C).

While at Highland, he spoke to Mr. Roger Leyden of Se-Kure and requested a security system

2

for Highland that would protect against theft while still allowing potential purchasers to inspect the displayed car stereos and camcorders. Mr. Leyden provided a security system that connected the stereos and camcorders to a security and alarm system by "using a retractable electronic wire device." Mr. Saputo's Declaration went on to describe the retractable security device: it had an electronic wire that attached at one end to the displayed products and to an alarm system at the other end. The displayed products were secured to the electronic wire of the system with an adhesive backed sensor, which was adhered to the displayed product and attached to the electronic wire. Some sensors included a plunger device that was depressed when the sensor was adhered to the displayed product. If the sensor was removed from the displayed product, the plunger would extend and an alarm would sound. An alarm would also be activated if the electronic wire was cut. There was a constant tension in the electronic wire so that when a potential purchaser completed the inspection of the displayed product, the wire would retract into the retractable device. According to the Saputo Declaration, "Se-Kure's electronic retractable security and alarm system" was first employed by Highland during Mr. Saputo's employment and was used at many stores prior to his departure in June 1992. *Id.*

In his Declaration, Mr. Rebb stated that he was a Regional Loss Prevention Manager for Highland Super Stores from 1987 through 1992. During his employment, his duties included the supervision and implementation of point-of-purchase security and alarm systems. He oversaw the installation of a security and alarm system from Se-Kure Controls, which was used to deter theft of car stereos and camcorders, while at the same time allowing potential purchasers to handle and inspect the items prior to purchase. The Se-Kure system used at Highland "connected the portable car stereos and camcorders to a security alarm system by using a device that retracted an electronic

wire which was used to transmit electronic signals that indicated the state of a sensor (the 'retraction device')." (*Motion To Exclude*, *Ex*. A)(Parenthesis in original).

Attached as Exhibit A to the Declaration was a picture of the type of retraction device Se-Kure sold to Highland. The picture was contained in Se-Kure catalog no. 194, eight pages of which comprised Exhibit A. According to the Declaration, at one end of the Se-Kure device, there was a non-retractable electronic wire attached to a splitter box and, at the other end, a retractable electronic wire that was attached to the sensor. The retraction device managed the electronic wire such that when the displayed product was not being handled by a potential purchaser, the electronic wire was retracted within the housing of the retraction device. (*Motion to Exclude*, Ex. A).

The sensor was attached to the displayed products through the use of an adhesive foam pad, and a plunger device was depressed when the sensor was adhered to the displayed product. If the sensor were removed from the displayed product, the plunger would extend out of the sensor causing an open circuit and sounding an alarm. An alarm would also be activated in the same way if the electronic wire were cut. There was a constant tension on the retractable electronic wire so that when a potential purchaser completed the inspection of the displayed product, the wire would retract into the housing of the retraction device. According to Mr. Rebb, the device was used in at many Highland stores prior to his departure in 1992. (*Motion to Exclude*, Ex. A).

### B.
### The Initial Disclosure Of The Rebb And Saputo Declarations In May, 2004

On May 20, 2004, Protex initially sent the Declarations by e-mail in the context of settlement discussions. (*See Motion to Exclude*, Ex. A, Ex. B, Ex. C.). A week later – on May 27th – Protex sent to Se-Kure's present counsel Bates-stamped copies of the Declarations. Copies were also produced

to all parties in the litigation. (*Motion to Exclude*, Exs. A-C). On May 24th, in response to the e-mail, Se-Kure's present counsel wrote to Protex's lawyer regarding the Declarations, which he found, "interesting," but "nonetheless erroneous." Indeed, the May 24th letter emphasized that the suggestion in the "unsupported recollections" of Rebb and Saputo that the patented invention was in commercial use and sale on or by June of 1992 were "impossible inasmuch as the patented device... simply did not exist in 1992....." (*Motion To Exclude*, Ex. B).

Nonetheless, Se-Kure's May 24th letter "recommend[ed]" that Se-Kure introduce and publish the Declarations in the case through formal production "so that the accuracy and veracity of each Declarant's representations can be duly and openly addressed by way of deposition of each of the two Declarants." Se-Kure also asked that all drafts of the Declarations and any supporting documentation be maintained for production, including the versions of the Declarations and the attachments that accompanied them "to enable the complete examination of these witnesses." (Ex. B at 1). This request was not only consistent with responsible lawyering, but with Se-Kure's belief that the Declarations were "prepared with some enhancement by Protex...." *Id.*

It is thus indisputable that by late April, 2004, Se-Kure, Vanguard, Telefonix, and everyone else associated with the case, were aware not only of the two witnesses, but of their Declarations describing the Se-Kure systems purchased by Highland. Given the criticality to Se-Kure's claim and to the defense of the issue of prior commercial usage and offer for sale, one might have expected the depositions of Messrs. Rebb and Saputo to be taken by Se-Kure. That was not to be.

### C.
### Se-Kure's Decision Not To Take The Depositions Of Mr. Rebb And Mr. Saputo

Although, Se-Kure insisted that the Rebb and Saputo Declarations be formally produced in

5

discovery to avoid the limitations of Rule 408, Federal Rules of Evidence, and that all drafts of the Declarations be produced so that there could be a complete examination of the declarants, Se-Kure's counsel decided not to take the depositions of either Rebb or Saputo. The Motion To Exclude explains Se-Kure's decision by saying that the Declarations were "somewhat vague" that they were not taken "seriously." (*Motion To Exclude*, at 2). And why? Because, we are told, Mr. Rebb only stated that a product in the 1994 Se-Kure catalog was "the *type of device*" purchased by Highland, not that it "*is* the device Highland purchased." (*Motion To Exclude*, at 2)(Emphasis in original). Se-Kure contends that it "believed" that the Declarations were describing a completely different pulley system, hand-drawn illustrations of which Se-Kure claims it produced at the outset of discovery. Se-Kure says it was confident that it was since the patented invention did not exist in 1992, thereby making it "impossible" for it to have been offered for sale at that time. (*Motion To Exclude*, at 3).

Whether Se-Kure's somewhat rigid textual analysis of the Declarations was correct, or whether it would have been more prudent to have followed Holmes' admonition to "think things, not words," Holmes, *Law In Science and Science In Law*, 12 Harv.L.Rev. 443, 460 (1889), is a question that need not be decided in the context of this Motion. In litigation, parties are bound by the choices they make.

### D.
### The Parties' Continued Discovery

In any event, as discovery progressed, plaintiff propounded interrogatories to the defendants. Interrogatory No. 7, which the Motion focuses on, (*Motion To Exclude*, at 3), asked:

> If it is Defendant's position that Plaintiffs Asserted Patent is invalid, void and/or unenforceable as not meeting the conditions for patentability because the subject matter sought to be patented in such patent is anticipated by the prior art, *state all*

*facts* upon which Defendant bases this allegation, including but not limited to:

(a) State whether the invention of Plaintiffs Asserted Patent is identically disclosed or described in the prior art, as set forth in 35 U.S.C. § 102;

(b) If the answer to subparagraph (a) of this Interrogatory is in the affirmative for Plaintiffs Asserted Patent, identify the prior art and each of said identical disclosures or descriptions therein; and

© If the answer to subparagraph (a) of this Interrogatory is in the negative for Plaintiffs Asserted Patent, identify what Defendant presently contends to be the closest item of prior art, specify what Defendant contends to be the difference between the subject matter of such patents, and the respective closest items of prior art identified herein, and specify by page number, column, line numbers, reference numerals, figure, illustration, picture, and/or paragraph number wherein said items of prior art each of said differences are found.

(*Motion To Exclude*, Exs. K-N)(Emphasis supplied). According to the plaintiff's submissions, the defendants' ultimate supplemental response to that interrogatory was this:

[Defendants] object[] to the timing of this interrogatory as premature to the extent the claims have not been interpreted by the Court in accordance with *Markman v. West-View Instruments, Inc.*, 517 U.S. 370 (1996). Notwithstanding and without waiving said objection, Plaintiff's asserted patent is invalid pursuant to 35 U.S.C. §102(b). Steve Kuhn, an Office Max employee, stated in his affidavit that Roger Leyden showed him an embodiment of the claimed invention more than one year prior to filing the '771 patent application. Investigation continues.

(*Motion To Exclude*, Exs. K-N). The defendants did not mention Mr. Rebb, Mr. Saputo, or their declarations.

### E.
### The Formal Reemergence Of Messrs. Rebb and Saputo

The subject of Mr. Rebb and Mr. Saputo and their Declarations came up again when recently the defendants moved to reopen discovery several months after it had closed so that the defendants could depose Messrs. Saputo and Rebb, whom the defendants claimed they had only "located" in August of 2006. Given Se-Kure's expressions of dubiety, I instructed counsel for the defendants to

provide a written explanation of the efforts that had been made to "locate" Rebb and Saputo since May of 2006. There also followed a request by Se-Kure for various documents reflecting contact between the defendants and Rebb and Saputo and responses from the defendants. (*See Motion To Exclude*, Exs. R-Z). Initially, the defendants' claim was that Highland Superstores had gone out of business. (*Vanguard Products' and Telefonix's Motion to Take Three Depositions*, at 3-4). That seemed more an evasion than an answer since in the first paragraph of his 2004 Declaration, Mr. Rebb stated that he was the Loss Prevention Manager for Walgreens & Co. in Southfield, Michigan (*Motion To Exclude*, Ex. A). He still is. (*Motion To Exclude*, Ex. Z). Similarly, Mr. Saputo's Declaration gave his current place of business. Only his office number has changed since then. (*Motion To Exclude*, Exs. A; AA).

All Vanguard's counsel could offer by way of explanation for the failure to have contacted Rebb and Saputo while discovery was open, was that although he might have known "[t]heir employment . . . [he] called and no one – They weren't there." (*Motion To Exclude*, Ex. P, Sept. 21, 2006 Tr., at 40). Defendants also pointed a finger at plaintiff for supposedly failing to produce either the witnesses' names or their Declarations in discovery. (*Vanguard Products' and Telefonix's Motion to Take Three Depositions*, at 4-5). At the hearing on the motion, Vanguard's counsel admitted that he "knew about these guys," but claimed he "could not find them. That was the problem." (*Motion To Exclude*, Ex. P, Sept. 21, 2006 Tr., at 39). A week later, however – again in open court – Vanguard's counsel attempted to say that the Declarations "were not produced in litigation." (*Motion To Exclude*, Ex. Q, Sept. 29, 2006 Tr., at 43). He then backtracked from that untenable position, admitting the Declarations were produced, but explaining:

The way they produced them, that's a little puzzling to me that Protext produced

them to opposing counsel but didn't produce it to us. It wasn't produced to us. But we did get those declarations before, your Honor. I'm not here to tell the Court we didn't.

(Sept. 29, 2006 Tr., at 43). [1]

Rather than responding to my order that the defendants detail the efforts they had made to "locate" Messrs. Rebb and Saputo, the defendants withdrew the Motion To Reopen Discovery. That decision was prudent. *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331 (N.D.Ill. 2005). Justice is not a game, and zealous advocacy does not entitle a lawyer to attempt to "'hoodwink a judge who is not overwise.'" *United States v. Paglia*, 190 F.2d 445, 448 (2nd Cir. 1951)(L. Hand, J.).

By October, 2006, Vanguard had secured new affidavits from Mr. Rebb and Mr. Saputo. (*Motion To Exclude*, Ex. T). Those affidavits have been used in support of Vanguard's Motion for Summary Judgment pending before Judge Andersen. Se-Kure seeks to bar their usage. *See Supplemental Brief In Support Of Motion To Exclude*, at 3-4. The new affidavits are directed to the same topic as their predecessors – whether the product described by the '590 Patent was offered for sale a year before Se-Kure applied for the patent. But what distinguishes the former from the latter is the greater degree of specificity in the descriptions of the product that was purchased by Highland.

Se-Kure insists the changes are "significant." While that may be true, for there would seem to be little point in making changes that did not have some meaning, the conclusion is not

---

[1] Se-Kure's briefs disparage Defendants' claimed inability to "locate" Rebb and Saputo. They argue that that presentation goes far to proving bad faith in the defense's failure to supplement their discovery responses. Even if the argument were to be fully credited, the inescapable reality is that Se-Kure has, since May 2004, been aware of Rebb and Saputo and their recollections of events.

That bad faith alone is not a ground for exclusion is illustrated by Judge Posner's opinion in *Fortino v. Quasar Co.*, 950 F.2d 389, 397 (7th Cir. 1991). There, the court found that a failure to supplement discovery disclosures was intentional and highly prejudicial. Although the case was reversed, Judge Posner noted, "[t]he issue will not recur on remand. Quasar now has ample notice as to what Mirabelli will testify to in the new trial that we feel compelled to order."

inexorable–and does not matter for present purposes. The Seventh Circuit is constantly carping about overlawyering, *Walker v. Abbott Laboratories*, 416 F.3d 641, 644 (7th Cir. 2005), and lawyer's "obsessi[on] about irrelevant and tedious details." *TIG Insurance Co v. Giffen Winning Cohen & Bodewes, P.C.*, 444 F.3d 587, 592 (7th Cir. 2006). And thus, the changes may not be as significant as Se-Kure thinks. But this is a matter for the summary judgment proceedings. *See Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1578 (Fed. Cir. 1991)("To the extent that apparent inconsistencies among the three Harris declarations raise questions of credibility and weight, . . . they were improperly resolved on summary judgment.").[2]

## II.
## ANALYSIS

The issue here is whether defendants ought to be precluded from relying on Rebb and Saputo – as a Rule 37 sanction – for failing to have disclosed them as individuals with knowledge of relevant information, for failing to have supplemented the original Rule 26 disclosures, and for failing to have supplemented the initial response to Interrogatory No. 7, which asked for all facts on which the defense was predicated. As a consequence, Se-Kure did not know that the defendants actually "intended to rely" on Rebb and Saputo. *See* Rules 26(a)(1)(A) and 26(e)(2), Federal Rules of Civil Procedure.[3]

Rule 26(a)(1)(A) requires a party to provide other parties with "the name and, if known, the

---

[2] Se-Kure's emphasis on the differences between the earlier and later Declarations is a tacit concession that the earlier versions cannot be excluded.

[3] The initial Rule 26 disclosures purportedly antedated Vanguard's knowledge of either individual by two years, and thus was not improper. At the time, Protex was operating under a joint defense agreement with Vanguard and Telefonix. (*Motion To Exclude, Ex.* D). Nonetheless, Vanguard claims it knew nothing of Rebb or Saputo before May 2004

10

address and telephone number of each individual likely to have discoverable information that the disclosing party *may* use to support its claims or defenses... identifying the *subjects* of the information." (Emphasis supplied). Rules 26(e)(1) and (2) require a party to supplement or amend its disclosures and discovery responses if it learns that the information disclosed or the response is "incomplete or incorrect *and if the additional corrective information has not otherwise been made known to the other parties during the discovery process or in writing.*" (Emphasis supplied). To ensure compliance with these requirements, Rule 37(c)(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2)... is not, unless such failure is harmless, permitted to use as evidence at a trial ... any witness or information not so disclosed."

The net effect of these Rules is that non-disclosure generally will result in exclusion of undisclosed evidence unless the information was made known to the other side in the context of the case itself. It is beyond debate that Se-Kure knew in May, 2004 that there were two individuals who claimed that they purchased systems from Se-Kure a year prior to the device that was the subject of the litigation. While Se-Kure pooh-poohed the Declarations, it insisted that they be made part of the discovery process so that the accuracy and veracity of the representations could be explored through depositions. In addition, although Se-Kure now contends that the Declarations really did not count because they were "somewhat vague" and could not possibly be describing the system involved in the litigation, they nonetheless asked that all drafts of the Declarations and any supporting documentation not be destroyed. The stated purpose for the request: "to enable the complete examination of these witnesses." (*Motion To Exclude*, Ex. B). Thus, Se-Kure cannot argue with the slightest degree of persuasiveness that it had no inkling that Saputo and Rebb were

individuals likely to have discoverable information relevant to the defense asserted by Vanguard and its co-defendants or that it did not know the subject of their testimony.

The only interrogatory on which Se-Kure relies for its failure to supplement argument is Interrogatory No. 7. It asked whether the defendants would be relying on the claim that the '590 Patent was invalid or unenforceable as disclosed by prior art and if so, to state the "facts" upon which the defendant bases the allegation, including the identity of that prior art. (*Motion to Exclude Witnesses*, at 3; Exs. K-N, Interrog. No. 7). The defendants' initial responses in 2002 stated that the interrogatory was premature because the court had not yet construed the patent-in-suit's claims, but indicated that they were interposing a 35 U.S.C. § 102(b) defense – the patent was invalid because the plaintiff's product was on sale a year before the patent application was filed. The answer went on to say that an embodiment of the invention was shown to an Office Max employee a year prior to the '771 patent filing. (*Motion To Exclude*, Ex. K).

According to Se-Kure, the defendants were required after May, 2004 to supplement the response with the names of Mr. Rebb and Mr. Saputo and their potential testimony and to state that they would be relying on their Declarations. The problem with this position is that plaintiff, armed with the knowledge that defendants were relying on the on-sale bar as a defense, found out about two witnesses and their testimony in May 2004. After all, as Se-Kure itself has argued, all this evidence was "old stuff and . . . stuff [that] has been part of the case now for two-and-a-half years." (*Motion To Exclude*, Ex. P, Sept. 21, 2006 Tr., at 36)(Emphasis supplied). Supplementation would have availed nothing required by the Rules was thus unnecessary. *See Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 733 (7th Cir. 2004). As the Advisory Committee Notes to the 1993 Amendment to Rule 26 emphasized,, there is " no obligation to provide supplemental or corrective information

that has been otherwise made know to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition . . . ."

It is idle to now suggest that Se-Kure was surprised when the Declarations or some variant were actually used by the defendants. (*Motion To Exclude*, at 8). It is equally unpersuasive to argue that the Federal Rules of Civil Procedure were breached because the defendants did not supplement their initial disclosures to say that they actually "intended to rely on [the] information" contained in the Rebb and Saputo Declarations. (*Reply*, at 1, 3- 4). The Federal Rules of Civil Procedure do not require such a statement of intent. Rule 26(a)(1)(A) merely requires disclosure of the identities of individuals "likely" to have discoverable information that the disclosing party "*may* use to support its claims or defenses. . . identifying the *subjects* of the information." (Emphasis supplied). That is precisely the information made known to Se-Kure in May, 2004 [4]

Despite its centrality to the case and to the explicit reliance by Vanguard's Response Brief on Rule 26(e)'s "otherwise . . . made known to the other parties during the discovery process" provision, Se-Kure's Reply Brief comes to grips with the argument by ignoring it. But that is a virtual concession of its accuracy. "The general rule in the Seventh Circuit is that a party's failure to respond to an opposing party's argument implies concession." *MCI WorldCom Network Services, Inc. v. Atlas Excavating, Inc.*, 2006 WL 3542332 at *3 (N.D.Ill. 2006)(Moran, J.). Instead of

---

[4] It is even more unpersuasive to suggest that Se-Kure justifiably relied on the defendants' "representations that they were not going to rely on the testimony of Messrs. Rebb and Saputo." (*Motion To Exclude*, at 10). There was no such representation, and the Motion's statement that one exists is unsupported and unsupportable. Had there been such a representation, the result would be different, and the defendants would not be allowed to profit from Se-Kure' s reliance on what it was told. *Cf.*, *R.H. Stearns Co. v. United States*, 291 U.S. 54, 61-62 (1934); *United States v. Goodwin*, 449 F.3d 766, 772 (7th Cir. 2006)(Posner, J.).

13

responding to the arguments raised in the Response Brief, Se-Kure's Reply relies on cases in which this exception was inapplicable or played no part in the court's analysis (*Reply*, at 12). *See Mehta v. Council for Jewish Elderly*, No. 95-1156, 1996 WL 272520, *2 (N.D.Ill. May 20,1996)(plaintiff failed to supplement discovery responses with claimed disabilities that were not otherwise made known during discovery); *Finwall v. City of Chicago*, No. 04-4663, 2006 WL 2355578, *3 (N.D.Ill. Aug. 10, 2006)(expert report excluded as late and incomplete under Fed.R.Civ.P. 26 and Local Rule 16.1); *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)(failure to provide expert report cause for excluding expert witness; defendant had no knowledge of expert's opinions regarding accident at issue); *Abbot Laboratories v. Syntron Bioresearch, Inc.*, No. 98-2359, 2001 WL 34082555, *1 (S.D.Cal. Aug. 21, 2000)(excluding prior art references not produced until after pretrial order).

In *Gutierrez*, the district court found that the plaintiffs were on notice that the witness at issue had pertinent information and was a potential witness, despite the fact that she was not listed in any of the defendants' disclosures or discovery responses. As it happened, the witness and her knowledge came to light during a deposition of another witness. On appeal, the Seventh Circuit determined that the deposition testimony should have alerted the plaintiffs to the witness and what she might know. The court explained that although the defendants did have an obligation to seasonably supplement their Rule 26(a) disclosures and interrogatory responses, such amendments were not required when the additional information was "'otherwise . . . made known to the other parties during the discovery process . . . .'" 382 F.3d at 733. *See also Fenje v. Feld*, 301 F.Supp.2d 781, 814-815 (N.D.Ill. 2003)(defendant was not obligated to supplement interrogatory answers to identify witnesses that plaintiff "was well aware of"); *Everst v. Credit Protection Ass'n, L.P.*, No.

01-7025, 2003 WL 22048719, *1 n.1 (N.D.Ill. Aug. 25, 2003)(defendants under no duty to supplement Rule 26(a) disclosures where plaintiffs admitted they knew of the witnesses at issue); *Cox v. Prime Financial Mortg. Corp.*, No. 05-4814, 2006 WL 1049948, *2 (N.D.Ill. Apr. 20, 2006)(no obligation to supplement discovery responses to identify witnesses made know at deposition).

Sanctions are not mandated by Rule 37 if the defendants' "failure is harmless" or "justified." Rule 37(c)(1); *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998). Here, it is both. It is harmless for the reasons discussed above, and the defendants were justified in believing that it would be an otiose exercise to provide information that Se-Kure had already emphasized in correspondence to its adversaries it deemed valueless. "The law never requires an idle thing to be done." *Brooklyn Life Insurance Co. v. Dutcher*, 95 U.S. 269, 272 (1877). *See also Telemark Development Group v. Mengelt*, 313 F.3d 972, 978 (7th Cir.2002)(tender excused if it would be a vain, idle or useless act); *Hentz v. Hargett*, 71 F.3d 1169, 1174 (5th Cir.1996)("no one should be required to do a useless act"); *McGraw v. Prudential Insurance Co.*, 137 F.3d 1253, 1263 (10th Cir.1998).

The decision not to depose Rebb and Saputo was based on a misapprehension that their versions of events were imbedded immovably in the amber of their Declarations, and that in that frozen state, while "interesting," they were of no substantive value to the defendants and thus there was no reason to depose either person. Yet, it is common in litigation that witnesses' initial memories and versions of events change – and often radically. Even answers to interrogatories are not immutable. *United States ex rel. Tyson v. Amerigroup Illinois, Inc.*, 230 F.R.D. 538, 541 (N.D.Ill. 2005)(collecting cases). "Dates are easily confused with the passing of years," *Title Guaranty & Trans. Co. v. Pam*, 232 N.Y. 441, 445, 134 N.E. 525 (1922)(Cardozo, C.J.), and time's

attrition causes memories to fade. *Dickey v. Florida*, 398 U.S. 30, 42 (1970)(Brennan, J., concurring). *Cf. Pruitt v. City of Chicago*, 472 F.3d 925, 928-929 (7th Cir. 2006)(Easterbrook, C.J.); *Jarad v. Gonzales*, 461 F.3d 867, 870 (7th Cir. 2006)(Easterbrook, J.) ("Memory often plays tricks, and the fact that... anyone... *thinks* he remembers something that occurred more than a decade earlier may be one of those tricks."). All of this was known to Se-Kure's experienced and skilled counsel. Yet, it made a strategic decision not to go forward with depositions of Rebb and Saputo. In law, as in life, choices have consequences.

Nor is it of any significance that the *defendants* chose not to take the depositions of Rebb and Saputo. They were under no obligation to take any depositions, and any inference that they did not do so because they concurred in the view that the Declarations were valueless was not reasonable. There are any number of reasons why a particular deposition might not be taken. One of the foremost, and one known to all experienced lawyers, is a belief that a particular witness is favorable to one party and that deposing the witness is either unnecessary or potentially harmful. Although it was perfectly permissible for Se-Kure to speculate that the reason the defendants chose not to depose Rebb and Saputo was because they shared Se-Kure's negative assessment of their evidence, like all attempts at mind reading, the endeavor was fraught with peril and uncertainty, and any prejudice resulting from a mistaken supposition is not taxable to the defendants.

In *David v. Caterpillar, Inc.*, 324 F.3d 851 (7th Cir. 2003), the plaintiff did not mention the witness at issue in her Rule 26(a) disclosures. She apparently learned of the witness some time later, but never supplemented her answers to defendant's interrogatories requesting the identity of persons with knowledge related to her claims. Nevertheless, the defendant was able to discover the witness and had the opportunity to interview him and learn the substance of his testimony prior to trial. The

Seventh Circuit held that the trial court reasonably concluded that there was no prejudice to the defendant, and that the witness need not have been excluded. *Id.* at 856-857. Here, the plaintiff had a similar opportunity to talk with or depose Messrs. Rebb and Saputo well before the summary judgment filings and chose not to do so. Any prejudice to plaintiff derives from that strategic decision.

It is certainly true that an opposing party's mere knowledge of the existence of a particular piece of information will not necessarily preclude an exclusionary sanction for failure to supplement otherwise incomplete or incorrect discovery responses. But that principle is a function of the plain language of Rule 26(e)(1) and (2), which requires that the information be made known in the context of the case itself. Just as proof of negligence in the air will not do, *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 341, 162 N.E. 99 (1928)(Cardozo, C. J.), neither will proof that a party was aware in the abstract of the existence of some piece of information that was not made known through discovery or in writing in the case.

*Abbott Laboratories v. Syntron Bioresearch, Inc.*, No. 98-2359, 2001 WL 34082555, *1 (S.D.Cal. Aug. 21, 2000). (*Motion To Exclude*, at 6) illustrates the point. There, the defendant brought counterclaims seeking declaratory judgment that it did not infringe plaintiff's patents, and that the patents were invalid and unenforceable. The case proceeded through fact discovery and expert discovery, followed by summary judgment motions and *Markman* hearings, and motions for reconsideration of the rulings on those motions. The parties filed memoranda of contentions of facts and law and a proposed pretrial order. After all that, the defendant filed a notice of prior art identifying the prior art that anticipated the patent-in-suit. That was the first time the plaintiff learned of the prior art upon which the defendant was basing its defense. As these references to prior

art came at the eleventh hour, the magistrate judge recommended that the motion to exclude be granted.

On appeal, the defendant argued that the plaintiff was not prejudiced by the admittedly and exceedingly late disclosures because it knew about the prior art from previous litigation or prosecution of the patents-in-suit. The district court rejected this argument, finding that the plaintiff did not have knowledge that these prior arts would be an issue in that particular case. 2001 WL 34082555, *2-3. The prior art references in *Syntron* did not fall under the exception in Rule 26(e) because they had not been made known during discovery in that case – unlike the two witnesses and their information were in this case – and thus, the plaintiffs' knowledge of the information was analytically meaningless, for knowledge. In short, *Syntron* has nothing to do with what transpired here.[5]

In the end, the plaintiffs' argument comes down to the claim that the defendants did not say that they disagreed with Se-Kure's negative assessment of the Declarations and did not tell them in *haec verba* that they actually intended to rely on Webb and Saputo. But as discussed above, Rule 26 did not impose that obligation on the Defendants, and the duty of supplementation under Rule 26 was not breached. While Se-Kure was free to dismiss the Declarations as unhelpful to the defendants, it was not free to assume that the contents of the Declarations were not subject to revision and refreshed memory. Nor was Se-Kure free in the event that its supposition proved

---

[5] Plaintiff also makes a reference to *Salgado*, which dealt with the plaintiff's failure to provide a timely expert witness report. (*Motion to Exclude Witnesses*, at 6). The court held that no matter what the defendant's previous experiences with the issue might have been, it had a right to know the conclusions of the particular expert witnesses with respect to the particular accident that prompted the litigation. 150 F.3d at 742. Again, the case is inapposite because the plaintiff here *did* learn of the two witnesses, the substance of their testimony, and it connection to the issues in *this particular case*.

mistaken to blame the defendants.

The defendants were not obligated to explain their counsel's mental impressions, conclusions, or opinions about the strength, merit, or relevance of the Declarations. *See* Rule 26(b)(3). They were not obligated to tell Se-Kure that they actually intended either to utilize the Declarations or that they might attempt to obtain additional testimony from Webb and Saputo. Se-Kure knew the identity of the witnesses, the relevance of the information to the asserted defense, and the possibility that the witnesses' memories might change. Se-Kure had the same information as did the defendants and had the same opportunity to pursue the matter. It is difficult to envision a case more squarely within the terms of Rule 26(e)(1) and (2) than the instant case.

Denial of the motion to exclude the testimony of Rebb and Saputo is consistent with the plain language of Rule 26(e)(1) and (2) and with the preference that cases be decided on their merits, absent so overriding consideration. *Conley v. Gibson*, 355 U.S. 41, 48 (1957); *Hefferman v. Bass*, 467 F.3d 596 (7th Cir. 2006).

## CONCLUSION

For the foregoing reasons, plaintiff's motion to exclude witnesses [#255] Thomas Rebb and Gregory Saputo is DENIED.

ENTER:_____
UNITED STATES MAGISTRATE JUDGE

DATE: 3/7/07