# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SE-KURE CONTROLS, INC. | |
| Plaintiff, | No. 02 C 3767 |
| | Judge Wayne Andersen |
| vs. | Magistrate Judge Jeffrey Cole |
| VANGUARD PRODUCTS GROUP, INC., and TELEFONIX, INC., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Se-Kure Controls, Inc., moves to exclude evidence relating to "Sun TV" and "Curtis Parsons" in this case under Fed. R.Civ.P. 37(c)(1), arguing that defendants, Vanguard Products Group, Inc. ("Vanguard") and Telefonix, Inc. ("Telefonix"), failed to disclose their intent to use that evidence under Fed.R.Civ.P. 26(a)(1)(A) and failed to timely supplement interrogatory responses regarding that evidence under Fed.R.Civ.P. 26(e)(2). The same reasons that required denial of Se-Kure's Motion to Exclude the Testimony of Thomas Rebb and Gregory Saputo require denial of Se-Kure's current motion. *See* Memorandum Opinion and Order of March 3, 2007.

## I.
## INTRODUCTION

Plaintiff filed this patent infringement suit in 2002, alleging that Vanguard, Telefonix, and other defendants willfully infringed United States Patent No. RE37,590 (the " '590 Patent" or the "patent-in-suit"). The patent describes a retractable sensor assembly for use with an alarm system to prevent theft of consumer electronic products while eliminating the problem of entangled and unsightly sensor cords. These alarm systems are installed at many major retail stores, allowing

consumers to pick up and view hand-held electronic devices, such as cameras and cell phones, while preventing the theft of those devices. The evidence that plaintiff hopes to exclude is arguably relevant to the question of whether plaintiff's security device was offered for sale more than a year before the '590 Patent was filed, which would invalidate the patent under 35 U.S.C. § 102(b). *See Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152, 1160 (Fed. Cir. 2006). Plaintiff's motion is strikingly similar to its motion to exclude Messrs. Rebb and Saputo, and the disposition of that motion and what was said there apply equally here. This case however presents even a stronger case for rejection since the purportedly nondisclosed witness was a SeKure employee, and the document allegedly concealed was a business record of SeKure's that he prepared and which Se-Kure produced in discovery to the defendants.

There was a time when "[t]o require the disclosure to an adversary of the evidence that is to be produced would be repugnant to all sporstmanlike instincts." 6 Wigmore, Discovery § 1845 at 490 (3rd Ed. 1940). Indeed, the common law's sporting theory of justice permitted the litigant to reserve evidential resources (documents and witnesses) until the final moment, marshaling them at the trial before his surprised and dismayed antagonist. It did not openly defend or condone trickery and deception; but it did regard "the concealment of one's evidential resources and the preservation of the opponent's defenseless ignorance as a fair and irreproachable accompaniment of the game of litigation." *Id. See also* 8 Wright, Miller & Marcus, Federal Practice & Procedure: Civil 2d § 2001 at 40 (1994).

Today's attitude towards discovery is vastly different. Contrary to the common law's approach, contemporary thought has concluded that secrecy is not congenial to truth-seeking, and that trial by ambush is incompatible with the just determination of cases on their merits. *See* Rule

1, Federal Rules of Civil Procedure; *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 253 (1978)(Powell, J., concurring and dissenting)(trial by ambush disserves the cause of truth); *Hickman v. Taylor*, 329 U.S.495, 500 (1948). By requiring disclosure of the identity of those who may have relevant information and the disclosure of relevant documents, the Federal Rules of Civil Procedure seek to avoid the surprise and secrecy that are antithetical to the informed determination of cases of their merits. *Cf., Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002). *See also Sud-Chemie, Inc. v. CSP Technologies, Inc.*, 2006 WL 2246404 (S.D. Ind. 2006)(collecting cases). [1]

The discovery provisions of the Federal Rules of Civil Procedure have not, however, relieved parties of the responsibility for preparing their own cases and for assessing the worth and relevance of materials that are obtained in discovery. The Rules were enacted against the backdrop of our adversary system, which continues to be "fundamental to Anglo-American jurisprudence." *United States v. O'Neill*, 437 F.3d 654, 660 (7th Cir. 2006). *See also Daubert v. Dow Chemical Co.*, 509 U.S. 579, 596 (1993); *Burdett v. Miller*, 957 F.2d 1375, 1380 (7th Cir. 1992). Under that system, each side is responsible for preparing and presenting its own case. *See Castro v. United States*, 540 U.S. 375, 387, 2003 (2003); *Tabaku v. Gonzales*, 425 F.3d, 417, 422 (7th Cir. 2005). There is no duty to warn adversaries, *Manicki v. Zeilmann*, 443 F.3d 922, 927 (7th Cir. 2006)(Posner, J.), or to assist an opponent in establishing its claims. *F.E.L. Publications v. Catholic Bishop of Chicago*, 1989 WL 100006 *3 (N.D.Ill. Aug. 22, 1989); *Korman v. Shull*, 184 F.Supp. 928, 936 (W.D.Mich. 1960). Parties do not have the right to know their adversaries' strategies, theories, or evaluation of

---

[1] The concept of trial by ambush has fallen into desuetude in both state and federal courts. Modern discovery practices, beginning with the Federal Rules of Civil Procedure in 1938, seek to facilitate (however haltingly and ineffectively) open and even-handed development of the relevant facts "so that justice may be delivered on the merits and not shaped by surprise or like tactical stratagems." *American Floral Services, Inc. v. Florists Transworld Delivery Ass'n*, 107 F.R.D. 258, 260 (N.D.Ill.1985)(Shadur, J.).

the strength or weakness of evidence that has been obtained through the discovery process. *Hickman v. Taylor, supra;* Rule 26(b)(3).

One's obligation is to abide by the Rule's discovery provisions. It is for the parties to make their own independent judgments about the significance of the information and how best to utilize it. *See Hirpa v. IHC Hospitals, Inc.,* 50 Fed. Appx. 928, at 2002 WL 31538584 (10th Cir. 2002) (unreported) (district court did not err in refusing to exclude from evidence pathology slides about which the plaintiff knew but did nothing); *Fidelis Fisheries v. Thorden,* 12 F.R.D. 179, 180 (S.D.N.Y. 1952) (Weinfeld, J.)(parties are entitled to know identities of people of those who may have knowledge, but not to an enumeration of which of those individuals the disclosing party will rely).

In light of these fundamental principles, Se-Kure's claim that it was ambushed by the defendants' use of a Se-Kure business record that Se-Kure, itself, produced in discovery, and whose author was a Se-Kure employee has little to commend it. At bottom, Se-Kure's real gripe is not that it was "sandbagged" by the Control Report or the identity of Mr. Parsons, but that the defendants did not tell it what they perceived the significance of the evidence to be. But the Federal Rules of Civil Procedure do not require the disclosure of that sort of information.

### A.
### The Evidence Se-Kure Seeks to Exclude

The evidence to which Se-Kure objects is a one-page document, a "SE-KURE CONTROLS, INC. Daily Contact Report." (*Motion to Exclude Evidence,* Ex. F). Dated June 16, 1993, it catalogs the customer calls for that day of then-Se-Kure employee, Curtis Parson, Se-Kure's vice-president of sales and marketing. Every sales person was required to fill out such a report on a daily basis and

4

include entries for every customer contact. (*Defendants' Opposition*, Ex. 1, at 235, 237). Se-Kure does not deny that the Contact Report was a record of a regularly conducted activity and thus admissible as an exception to the hearsay rule. *See* Rule 803(6), Federal Rules of Evidence.[2]

According to the Report, Mr. Parsons asked his contact at Sun TV and Appliances "how test was going and if the balance of recoilers were received." In their motion for summary judgment filed January 3, 2007, the defendants argue that the balance of the recoilers had to have been shipped sometime before June 16, 1993, and, therefore, had to have been offered for sale sometime before June 10, 1993 – a year before the patent-in-suit was filed. (*Motion to Exclude Evidence*, Ex. E, at 16-17). Whether this conclusion necessarily follows and whether the report will win the day for the defendants on their Section 102(b) defense remains to be seen. The only issue presented here is whether Rule 37(c)(1) requires that the evidence be excluded..[3]

At the outset, it must be stressed that it was the *plaintiff* that produced the "Contact Report" during discovery, marking as SK 29689. In addition, plaintiff designated it "Highly Confidential Attorney's Eyes Only." Pursuant to the Protective Order [Dkt. # 66], the attorneys had the option to designate each document produced in discovery as either "Confidential" or "Highly Confidential

---

[2] Roger Leyden, the founder, owner and president of Se-Kure, testified at his deposition that sales personnel were required to complete a Daily Contact Report each time a customer was visited. The Reports were sent to Se-Kure's office to the attention of vice president of sales and marketing and would be seen by Mr. Leyden, although he did not read all of them do to their sheer numbers.

[3] Even though it is a matter for the defendants' summary judgment motion, nearly half of the reply brief questions the probative value of the "Contact Report." (Reply, at 1-4, 6). If the document is so unpersuasive, one may question the effort being expended to keep it from Judge Anderson's consideration. *Cf. United States v. Ladish Malting Co.*, 135 F.3d 484, 490 (7th Cir. 1998)("The prosecutor must have thought that the instruction mattered; why else so vigorously oppose Ladish's request for an actual-knowledge instruction"); *Hicklin Engineering L.C. v. R.J. Bartell*, 439 F.3d 346, 351 (7th Cir 2006)(Easterbrook, J.) ("Anyway, if this was beside the point, why did Hicklin refuse to admit that Bartell was an independent contractor?").

Attorney's-Eyes Only," depending on the sensitivity of the document's content of the information in the document. The designation the plaintiff's own lawyers attributed to the "Contact Report" demonstrates that they carefully reviewed it prior to producing it.[4]

## B.
## The Parties' Communications Regarding "Sun TV" Invoices

In 2004, Se-Kure obtained a document with a handwritten note from one of Vanguard's outside lawyers with Mr. Parsons name and a date of 2001. Thus, by 2004, Se-Kure had the declarations of Messrs. Saputo and Rebb,[5] a handwritten note with Parsons' name on it, and of course Mr. Parsons' Control Report that he prepared after visiting Sun TV.

Approximately a year after the close of discovery, on November 28, 2006, the defendants sent plaintiff a letter demanding that it produce "all invoices and related documents concerning transactions with Sun TV and Appliances in the 1992-1993 time period." (*Motion to Exclude Evidence*, Ex. A). Plaintiff responded about a month later, reminding the defendants that it had already produced for their inspection all of its invoices relating to "Sun TV and Appliances" on more than one occasion, and understandably aggravated that such a request was made so long after discovery was closed. (*Motion to Exclude Evidence*, Ex. B). Plaintiff advised the defendants that it would not comply with their request unless they could explain "how invoices from "Sun TV" might be relevant to this case, why [defendants] did not copy these invoices the first several times

---

[4] Had counsel not carefully reviewed the document prior to its designation, they would have been guilty of a bad faith designation (*See* Protective Order, ¶ 4), or of having made inappropriately broad, "blanket" claims of confidentiality. *See Citizens First Nat. Bank of Princeton v. Cincinnati Insurance Co.*, 178 F.3d 943, 945 (7th Cir. 1999). The integrity and skill of Se-Kure's lawyers make such a conclusion unthinkable.

[5] See Memorandum Opinion and Order of March 7, 2007.

[they] inspected them, why [they] delayed almost a year after the close of discovery to seek the documents and why [plaintiff] should now expend [its] time locating that which [defendants had] already repeatedly passed up." (*Id.*).

The defendants explained the evidence was relevant to the on-sale bar defense, and because plaintiff had previously – a few weeks earlier – collected, copied, and delivered invoices from another store, the defendants assumed the same might be done with "Sun TV." (*Motion to Exclude Evidence*, Ex. C). Plaintiff wrote back, again reminding defendants that they had already been given access to the very documents they were requesting on several occasions, and explaining that it would be too time-consuming to collect and copy the "Sun TV" invoices because they had not been segregated in the manner that those from the other store had. (*Motion to Exclude Evidence*, Ex. D). Plaintiff also took defendants to task for claiming for the first time that there had been an invalidating sale to "Sun TV" and accused defendants of "generat[ing] new, conveniently 'favorable' evidence only *after* the close of discovery. (*Id.* (Emphasis in original)).

Plaintiff never provided the set of invoices, nor did it have to. When defendants filed their now-pending motion for summary judgment, they contended that plaintiff sold the patented product to "Sun TV" more than one year before the "critical date," purportedly rendering the '590 patent invalid. They relied, not on the "Sun TV" invoices they belatedly sought, but on the "Contact Report."

## C.
### The Plaintiff's Argument Regarding Curtis Parsons

It is Se-Kure's contention that although the defendants had the "Contact Report" for years they never raised the issue of a purportedly invalidating sale to Sun-TV as a defense until the filing

of their summary judgment motion. Essentially the same argument is advanced as to Mr. Parsons, whom it is argued the defendants knew about prior to the suit – as evidenced by handwritten notes the defendants produced in discovery from the files of Paul Juettner, who provided the defendants with a legal opinion regarding the validity of certain patent claims. (*Motion to Exclude Evidence*, at 3). The notes laconically refer to Mr. Parsons as "ex Sekure guy – Office Max acct." In its original form, the document is undated, although it mentions a telephone call with Chris Kelsch, one of defendants' principals, that occurred on July 5, 2001. Plaintiff later dated the document, making it a deposition exhibit as of December 7, 2005.

Plaintiff calls defendants to task for not mentioning Mr. Parsons in either their initial disclosures or in their interrogatory responses. (*Motion to Exclude Evidence*, Exs. L and M; G-J). He was not mentioned in depositions, nor was he deposed, and the defendants have never produced any witness statements regarding him. More "sandbagging" as the plaintiff would have it. Because the defendants purportedly knew about Mr. Parsons before the lawsuit was filed, the plaintiff contends they should have listed him in their initial disclosures under Rule 26(a)(1)(A). Plaintiff also argues that the defendants should have supplemented their interrogatory responses, pursuant to Rule 26(e)(1) to refer to Mr. Parsons and his significance to an on-sale bar affirmative defense. According to Se-Kure, the "[d]efendants' failure to disclose their intent to rely on these[sic] witnesses is neither justified nor harmless." (*Motion to Exclude Evidence*, at 6). Under Rule37(c)(1), the plaintiff asks that "any references to a Curtis Parsons, Sun TV and/or any purported invalidating sales thereto" be excluded as evidence. " (*Motion to Exclude Evidence*, at 6). That would include, apparently, the "Contact Report."

8

## II.
## ANALYSIS

Rule 26 requires a party to provide other parties with "the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses . . ., identifying the subjects of the information." Rule 26(a)(1)(A). Rule 26 also requires a party to supplement or amend its disclosures and discovery responses if it learns that the information disclosed or the response is "incomplete or incorrect *and if* the additional corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Rule 26(e)(1) and (2)(Emphasis supplied). To ensure compliance with these discovery requirements, Rule 37 provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any witness or information not so disclosed." Rule 37(c)(1).

Se-Kure's objections to the "Contact Report" is that defendants knew about it "for years – but never raised the issue of a purportedly invalidating sale to Sun TV as a defense. . . ." (*Motion to Exclude Evidence*, at 3). It would be more precise to say that the defendants did not tell Se-Kure that it planned to use the Contact Report *as evidence* to support the defense. The focus is then shifted to the failure to list the report's author, Mr. Parsons, in their initial disclosures as a person who might have knowledge or to have supplemented disclosures and/or responses to discovery to identify him as a person likely to have discoverable information that the defendants might use to support its prior-sale defense.

9

## A.
## Mr. Parsons

Mr. Parsons will not be testifying in this case. He was never deposed, and he passed away in 2005. But the evidence upon which defendants rely in their motion for summary judgment is the "Contact Report" he filled out which qualifies as the record of a regularly conducted activity under Rule 803(6), Federal Rules of Evidence. Under that exception to the hearsay rule, the availability of the author of the document to testify is irrelevant. Rule 803(6) provides:

> Records of Regularly Conducted Activity. – A memorandum, report, record . . . in any form, of acts, events, . . . made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record . . . all as shown by the testimony of the custodian or other qualified witness . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.[6]

The Contact Report is "typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls. *Palmer v. Hoffman*, 318 U.S. 109, 113 (1943) Phone logs like that of Mr. Parsons clearly qualify under Rule 803(6). *See Integrated Pest Management Services, LLC v. BellSouth Advertising & Pub. Corp.*, No. 04-2880, 2005 WL 3096131, *8 (N.D.Ga. Nov. 16, 2005)(telephone call logs); *In re Memorex Telex Corp.*, 242 B.R. 826, 831 (D.Del. 1999)(call logs of contacts with customers).

---

[6] Plaintiff's vice president of sales and marketing has testified that it was a regular practice that plaintiff's salesman complete "Contact Reports" for all customer contacts. His testimony is a sufficient foundation for the document to qualify under Rule 803(6). *United States v. Muhammad*, 928 F.2d 1461, 1469 (7th Cir.1991)("A witness is 'qualified' if he understands his company's record-keeping system, regardless of whether he personally participated in the document's creation.").

10

In the end, then, Mr. Parsons' testimony, or his availability to testify, or even the defendants' knowledge of him does not matter. The "Contact Report" and Mr. Parsons' testimony are distinct pieces of evidence, and the admissibility of the "Contact Report" – the evidence upon which the defendants rely – is unaffected by whether Mr. Parsons is available to testify. Long before the Federal Rules of Evidence were promulgated, Learned Hand championed the admissibility of such records to prove transactions, "without the task of calling those who . . . had a part in the transactions recorded": "Records, and records alone, are their adequate repository, and are in practice accepted as accurate upon the faith of the routine itself, and of the self-consistency of their contents." *Massachusetts Bonding & Insurance Co. v. Norwich Pharmacal Co.*, 18 F.2d 934, 937 (2nd Cir. 1927).

Consequently, even if plaintiff's contention regarding the failure to have identified Mr. Parsons as a potential witness were accepted, the Contact Report itself would still be admissible. Se-Kure argues that if only it had known the significance attached by the defendants to the Contact Report, it could have deposed Mr. Parsons before his death. But Se-Kure was not entitled to know what significance the defendants' lawyers attributed to the Report. Moreover, what Mr. Parsons could have added to the Report, Se-Kure does not say, and whatever he might have said would not make an otherwise admissible business record inadmissible. It must not be forgotten that what is significant is the content of the Report. But that Report was Se-Kure's own document that it produced in discovery.

11

## B.
## The "Contact Report"

The plaintiff cries foul because the defendants never referred to the "Contact Report" or its significance in their disclosures or responses to interrogatories. The problem with that argument is that it ignores Rule 26(e), which excuses supplementation of prior disclosures and responses where the information was made known during discovery or in writing. The "Contact Report" was Se-Kure's own document, which it knew about long before the defendants did. It was not only produced in discovery, it had been carefully reviewed prior to its being designated "Highly Confidential.

Because the document was produced in the course of discovery, the defendant obviously could not have mentioned it in any initial disclosures, and the supplementation argument fails in light of Rule 26(e)'s, "otherwise been made known to the other parties during the discovery process" provision. *See Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 733 (7th Cir. 2004). Claims of "sandbagging" lose their persuasiveness when it's your sand and your bag. *Guzman v. Abbott Laboratories*, 59 F.Supp.2d 747, 754 (N.D. Ill. 1999) (Defendant "cannot say that it was unfairly surprised by any of the exhibits" which it employees originally prepared.).

As with its earlier motion to exclude evidence, Se-Kure ignores Rule 26(e), even though the argument with supporting cases is extensively discussed in the defendant's response brief. Instead Se-Kure relies on cases in which this exception played no part in the court's analysis. (*Motion to Exclude*, at 5-6)[7] The Seventh Circuit has called "pointless," what it has characterized as the "ostrich-like

---

[7] See *Mehta v. Council for Jewish Elderly*, No. 95-1156, 1996 WL 272520, *2 (N.D.Ill. May 20,1996)(plaintiff failed to supplement discovery responses with claimed disabilities that were not otherwise made know during discovery); *Finwall v. City of Chicago*, No. 04-4663, 2006 WL 2355578, *3 (N.D.Ill. Aug. 10, 2006)(expert report excluded as late under Fed.R.Civ.P. 26 and Local Rule 16.1); *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)(failure to provide expert report cause for
(continued...)

tactic" of pretending that potentially dispositive authority against a litigant's position does not exist." *Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192, 1198 (7th Cir. 1987).

## C.
## Sanctions Are Inappropriate

When one reads between the lines of plaintiff's motion, it becomes clear that it is not so interested in items of evidence that defendants purportedly hid from it, but defendants' strategies and assessments of the evidence Se-Kure produced in discovery. This can be demonstrated by the manner in which the plaintiff seeks to demonstrate that the defendants have acted in bad faith. The plaintiff contends there can only be three explanations for the defendants' failure to disclose and/or depose Mr. Parsons as a witness in this case:

> (a) the Defendants *always* intended to rely on Mr. Parsons, but withheld that information in their discovery responses in order to "sandbag" Se-Kure; (b) the Defendants *never* spoke with Mr. Parsons because they were simply not interested in pursuing what they now allege is case dispositive evidence; or © the Defendants *did* speak with Mr. Parsons and he provided them with information that undermines their "prior art sale" position, and they therefore withheld his name during discovery because it would undermine their case.

(*Motion to Exclude*, at 7(emphasis in original)).

Precisely what the point of the trilogy is is uncertain. The first hypothesis has nothing to do with the admissibility of the Contact Report and the applicability of Rule 26(e). Litigants are sandbagged by information that is not part of the mix of information available to everyone through the discovery process. That obviously was not the case here: Parsons was (or had been) a Se-Kure employee and was the author of a document produced by Se-Kure. Under these circumstances,

---

[7](...continued)
excluding expert witness; defendant had no knowledge of expert's opinions regarding accident at issue); *Abbot Laboratories v. Syntron Bioresearch, Inc.*, No. 98-2359, 2001 WL 34082555, *1 (S.D.Cal. Aug. 21, 2000)(excluding prior art references not produced until after pretrial order).

13

claims of surprise and sandbagging are unpersuasive. *Guzman*, 59 F.Supp.2d at 754.

The second possibility advanced by Se-Kure has nothing to do with the question of admissibility. It is essentially a kind of evidentiary argument that the Contact Report should not be accorded the significance now sought to be attributed to it because the defendants never pursued the matter directly with Mr. Parsons. If one were to speculate – and that is all that Se-Kure has done – the more logical conclusion is that the defendants attributed enormous significance to the Report and did not want to give Mr. Parsons the chance to dilute the perceived force of the document in a deposition.[8]

The third scenario is as irrelevant and speculative as the other two. In addition, under the hypothesized set of facts, the defendants would have had no duty to supplement, for Mr. Parsons would not be a person likely to have information "that the disclosing party may use to support its claims or defenses...." Rule 26(a)(1)(A).

Plaintiff's characterization of defendants' strategic choices is somewhat ironic given the choices it made with two other witnesses, Thomas Rebb and Gregory Saputo. When plaintiff initially reviewed their declarations in 2004, it concluded that the declarations were "interesting" but essentially ineffectual. Hence it chose not to depose the declarants. *See Memorandum Opinion and Order of March 7, 2007*. Here, the defendants made the same kind of strategic choice, preferring the Contact Report to any testimony Mr. Parsons might have provided. That was a permissible

---

[8] As a matter of evidence, no inference could be drawn adverse to the defendants because they never spoke with the Mr. Parsons. As they March 7, 2007 Memorandum Opinion and Order noted, inference from silence are perilous. To this should be added, "mere silence is quite different from concealment." *Stewart v. Wyoming Cattle-Ranche Co.* 128 U.S. 383, 388 (1888). The defendants insist that they did not fully appreciate the significance of the Report until late in the game. If that is true, it is well to recall wisdom too often never comes and it ought not be rejected because it comes late. *Wolf v. Colorado* 338 U.S. 25, 47 (1949)(Rutledge, J., dissenting).

14

strategic decision, not an indicia of bad faith.

What Se-Kure is really complaining about is that the defendants did not explain to the plaintiff what they perceived to be the significance of Se-Kure's own document. Indeed, plaintiff submits that "[d]efendants actually *refused* to tell Se-Kure why "Sun TV" was suddenly relevant." (*Motion to Exclude*, at 8). As with its prior motion, what plaintiff really wanted from defendants is akin to work product, and the most strongly protected work product: "mental impressions, conclusions, opinions, or legal theories of an attorney." Rule 26(b)(3). Plaintiff is simply not entitled to such analysis from the defendants. Accordingly, exclusion of the evidence at issue as a Rule 37(c)(1) sanction is inappropriate.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to exclude evidence [#279] is DENIED.

ENTER: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 3/12/07