IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SE-KURE CONTROLS, INC., | ) | |
| Plaintiff, | ) ) | |
| | ) | No. 02 C 3767 |
| v. | ) ) | Judge Wayne R. Andersen |
| VANGUARD PRODUCTS GROUP, INC., and TELEFONIX, INC., | ) ) ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Susan E. Cox, Magistrate Judge

The matter before the Court is a motion to disqualify defendants' patent expert, brought by Plaintiff Se-Kure Controls, Inc. ("Se-Kure"). Specifically, Se-Kure moves the Court to disqualify George Gerstman, the patent expert for both Defendants Vanguard Products Group ("Vanguard") and Telefonix Inc. ("Telefonix") (collectively referred to as "Defendants"). Defendants retained Mr. Gerstman as the patent law expert to opine on patent procedure and the question of inequitable conduct. Se-Kure argues Mr. Gerstman's expert report lacks specialized knowledge or training on the fact questions at issue and should, thus, be stricken and Mr. Gerstman barred from testifying. The motion is denied, with noted limitations by the Court on the scope of Mr. Gerstman's testimony [dkt 214].

**I.    The Patent-In-Suit**

The '590 Patent is a "reissue" of U.S. Patent No. 5,552,771 ("the '771 Patent"), which originally issued in 1996. The '590 Patent is for a retractable sensor assembly for use with an alarm

system to prevent theft of products while, at the same time, eliminating the problem of entangled cords. These alarm systems are typical in most retail stores to allow consumers to pick-up and view hand-held electronic devices, such as cameras and cell phones, while preventing the theft of those devices. The system involves an alarm box that plugs into the wall and a splitter box that plugs into the alarm box. A retractable cable plugs into the splitter box and the opposite end has a sensor that is attached to a product. If the sensor is removed, an alarm is activated. The retractable cable is on a retraction mechanism, also called a "recoiler" or "retractor." The recoiler allows the cable to be withdrawn as the customer handles the product and retracts the cable back into the recoiler when the customer is done.

## II.     Background

In 2002 Se-Kure filed this lawsuit against multiple defendants alleging infringement of U.S. Patent No. RE 37590 ("the '590 Patent"). All but two of the original defendants have settled with Se-Kure. The remaining two Defendants, Telefonix and Vanguard, are related. Telefonix manufactures and supplies to Vanguard the sensor-bearing "electrical retractor" component of the product at issue. Telefonix's President, Paul Burke, is also a co-owner of Vanguard. Telefonix and Vanguard, thus, share the same counsel and defenses in the case. Both Defendants claim the '590 Patent is unenforceable because of alleged inequitable conduct before the United States Patent and Trademark Office ("PTO") by Se-Kure.

In late 1996, after the '771 Patent issued, Se-Kure claims it learned that Defendant Telefonix was supplying another company with power cord retractors that had been converted to retail-security assemblies for integration into a merchandiser's alarm system. Se-Kure also asserts Telefonix was marking those products with its own telephone handset patent numbers. The telephone handset, or

telephone retractor devices, are patented by Telefonix and identified as Burke, U.S. Patent No. 5,094,396 and Burke, U.S. Patent No. 4,989,805 (collectively referred to as "the Burke Patents"). Se-Kure contends it knew of these telephone retractor devices (and the Burke Patents) back in May 1996, but had dismissed them as irrelevant because they were not related to sensors, alarm systems, or retail security.

With this knew knowledge of the security assemblies, however, Se-Kure took action and discussed the Burke Patents with its patent counsel. It was at this time Se-Kure claims it realized that Claim 11 of the '771 Patent, already issued, could be deemed relevant to the Burke Patents. Accordingly, in February 1997 Se-Kure surrended the '771 Patent to the PTO for reissue. In the reissue declaration, Se-Kure described the events of the prior months, noting that while they had been aware of the Burke Patents (*i.e.*, the prior art cord reels for telephone handsets), they had not considered those prior art references until they saw what they deemed "several infringers" place notice of the Burke Patents on certain alarm assemblies.

The reissue declaration to the PTO explains that Se-Kure's error was use of imprecise language when describing the continuous electrical path and a failure on the part of the inventors to recognize how the previous language might be read. The reissue declaration further provides that Se-Kure believes the '771 Patent is partly inoperative or invalid by reason of claiming both more and less than they had a right to claim. All specified errors in the reissue declaration Se-Kure claims arose without any deceptive invention on their part.

**III. Discussion**

Se-Kure argues that according to his expert report, Mr. Gerstman intends to render opinions on patent law, the Court's exclusive province, and fact questions that should be left to the trier of

fact. Specifically, Mr. Gerstman's report describes the United States Patent System, procedure within the PTO, and how Se-Kure allegedly intentionally withheld material prior art, thereby rendering the '771 the '590 Patents unenforeable.

**A.    Inequitable Conduct**

The Federal Circuit Court of Appeals defines inequitable conduct as an "affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive."[1] There is a "duty of candor and good faith" on the part of an applicant that includes the "duty to disclose to the Patent Office all information known ... to be material to patentability."[2] Thus, to be guilty of inequitable conduct due to a "failure to disclose" a party must offer clear and convincing proof of: (1) prior art or information that is material; (2) knowledge of that prior art and its materiality chargeable to the applicant; (3) the applicant's intent to mislead the PTO by failing to disclose the prior art or information.[3] For information to be material there must a "substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the applicant to issue as a patent."[4] It is up to the district court to weigh the findings of materiality and intent to determine whether inequitable conduct was committed.[5]

---

[1] *Molins PLC v. Textron, Inc.,,* 48 F.3d 1172, 1178 (Fed.Cir.1995).

[2] 37 C.F.R. § 1.56(a).

[3] *FMC Corp. v. Manitowoc Co., Inc.,* 835 F.2d 1411, 1415 (Fed.Cir. 1987).

[4] *Refac Int'l, Ltd. v. Lotus Dev. Corp.,* 81 F.3d 1576, 1581 (Fed.Cir. 1996).

[5] *Revlon Consumer Prod. Corp. v. L'Oreal S.A.,* 1997 WL 158281, *1 (D.Del.).

**B.	Expert Testimony**

In this case Defendants assert Mr. Gerstman's testimony as to inequitable conduct will assist the trier of fact and is, thus, admissible under Federal Rule of Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[6]

The law of the Seventh Circuit Court of Appeals governs this motion, as opposed to the law of the Federal Circuit, because the admission of expert testimony is a procedural matter not unique to patent law.[7] Whether to admit expert testimony is determined by the district court and, as provided for by Rule 702, testimony may be excluded if the testimony will not assist the trier of fact or is not sufficiently reliable. Also inadmissable is expert testimony as to legal conclusions that will determine the outcome of the case.[8] Nonetheless, the district court has "wide latitude in the kinds of aids, including testimony of witnesses, employed to assist in the job of claim interpretation as a matter of law."[9] Further, a patent lawyer may testify in a patent suit and any lack of technical expertise merely goes to the weight of the expert's testimony, not its admissibility.[10] The court has discretion to adopt an expert legal opinion as its own, find guidance from it, to ignore it, or to

---

[6] Fed. R. Evid. 702.

[7] *See Golden Blount, Inc. v. Robert H. Peterson Co.,* 438 F.3d 1354, 1358 (2006).

[8] *Good Sheperd Manor Foundation, Inc. v. City of Momence,* 323 F.3d 557 (7th Cir. 2003).

[9] *Endress + Houser, Inc. v. Hawk Measurement Sys. Pty., Ltd..,* 122 F.3d 1040, 1042 (Fed.Cir. 1997).

[10] *Liquid Dynamics Corp. v. Vaughan Co., Inc.,* No. 01-6934, 2004 WL 2260626 (N.D. Ill. Oct. 1, 2004).

exclude it entirely.[11]

Attempts by Mr. Gerstman, for example, to testify as to whether the '590 Patent is enforceable, whether Se-Kure committed inequitable conduct, or as to the level of intent behind any alleged failures to disclose prior art, is all inadmissable testimony. It is a basic principle that the duty of the district court is to explain the law. Testimony by a witness, therefore, is limited to opinions based on facts, but may not include legal conclusions. Mr. Gerstman's statements that he expects to testify about Se-Kure's failure to comply with its duty of disclosure, resulting in equitable conduct, is simply inadmissable. Mr. Gerstman is also not a mind-reader. He may not testify that he knows Se-Kure's intent to hide certain information nor may he testify that he knows Se-Kure lied about certain information. Also inadmissible are Mr. Gerstman's long explanations of rules and legal definitions.

Mr. Gerstman is permitted to testify about general procedures involved in the patent application process and the operations and functions of the PTO. This type of testimony can be helpful to the fact-finder.[12] As an attorney with 40 years experience in patent law and as a former United States Patent Examiner, Mr. Gerstman is also likely able to provide some factual context for why Se-Kure's behavior may have been inequitable, but only in the narrow context that he is able to testify as to the materiality of the relevant prior art. If Mr. Gerstman can shed light on what a reasonable examiner would have considered important, his testimony is admissible. Should his testimony stray "into matters that are the exclusive purview of the court," such testimony must be

---

[11] *Markman v. Westview,* 52 F.3d 967, 983 (Fed.Cir. 1995)(holding that legal experts' opinions do not bind the court or relieve the court of its obligation to construe a patent because the patent attorney's construction of the claims is entitled to no deference) .

[12] *See Bausch & Lomb, Inc. v. Alcon Laboratories, Inc.,* 79 F.Supp.2d 252, 255 (W.D.N.Y. 2000)(finding that testimony concerning general patent application procedures may be helpful to the jury).

curtailed.[13]

Se-Kure finally disputes Mr. Gerstman's reliance on facts that Se-Kure argues are fabricated. Se-Kure claims, for example, Mr. Gerstman's reference to a certain Montgomery Wards Kit sold in 1992 is incorrect because there only exists invoices for a sale of these alarm kits in late 1993. As stated by Defendants, any factual disputes should be resolved through cross examination. Such discrepancies do not warrant altogether barring Mr. Gerstman's testimony.

The Court notes that evidence of inequitable conduct is effectively evidence of fraud.[14] Because there exists a danger that such evidence could prejudice issues before the jury, Mr. Gertsman's testimony should be heard by the Court, outside the purview of the jury. As Defendants point out, because inequitable conduct is an issue decided by the court, there is no concern of unduly influencing the jury if the expert testimony on this subject is tried outside the presence of the jury.[15]

---

[13]*Armament Sys. & procedures, Inc. v. IQ Hong Kong Ltd., et al.,* No 00-1257, 2007 WL 1267877 (E.D. Wis.)(holding that the motion to exclude the expert's testimony was denied).

[14]*Liquid Dynamics Corp.,* No. 01-6934, 2004 WL 2260626 at *7.

[15]*See THK Am., Inc. v. NSK, Ltd. & NSK Corp.,* No. 90-6049, 1996 WL 33398071 (N.D. Ill Jan. 9, 1996)(finding that separation of jury issues from those decided by the court, namely inequitable conduct, is warranted); *see also Agfa Corp. v. Creo Prod., Inc.,* 451 F.3d 1366, 1375 (Fed.Cir. 2006)(holding inequitable conduct is an equitable defense "that may be adjudicated by the trial court without a jury.").

## IV. Conclusion

Se-Kure's motion to disqualify Defendants' patent expert, Mr. Gerstman, is denied with certain limitations on the scope of Mr. Gerstman's testimony noted by the Court. Further status set for February 27, 2008 at 9:30a.m.

**IT IS SO ORDERED**

**ENTERED: January 17, 2008**

　　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**